IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22 CR 62 HEA |
| | ) | |
| HUSSEIN KHALAF, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>DEFENDANT'S SUPPLEMENTAL MOTION TO WITHDRAW GUILTY PLEA UNDER RULE 11(d)(2)(B) AND REQUEST FOR A CONTINUANCE OF TRIAL TO ACCOMMODATE ADEQUATE BRIEFING OF THIS MATTER</u>**

NOW COMES Defendant, HUSSEIN KHALAF, through Assistant Federal Defender Mohammed Ahmed, supplementing the Defendant's pro se motion to withdraw his plea (Doc. 86) and furthering his request for this Honorable Court to withdraw his guilty plea under Federal Rule of Criminal Procedure 11(d)(2)(B). In support thereof, he states the following:

<u>Procedural and Factual Background</u>

1. On January 24, 2022, Mr. Khalaf was arrested on a criminal complaint charging him with communicating threats through interstate communication in violation of 18 U.S.C. § 875 subsections (b), (c), and (d), and cyberstalking in violation of Title 18 U.S.C. § 2261A(2). Mr. Khalaf was thereafter indicted on a single count of violating 18 U.S.C. § 2261A(2)(B).

2. On January 25, 2022, the Office of the Federal Public Defender for this judicial district was appointed to represent Mr. Khalaf. The undersigned entered an appearance on January 27, 2022.

3. After the undersigned represented Mr. Khalaf as he litigated the issue of pretrial detention up and through the Eighth Circuit Court of Appeals, private counsel entered on behalf

of Mr. Khalaf on April 28, 2022. That same day, the undersigned filed a motion to withdraw upon the entry of private counsel. That motion was granted the next day on April 29, 2022.

4. On June 1, 2022, Mr. Khalaf, through his private counsel, filed a waiver of pretrial motions. Mr. Khalaf asserts that he was not consulted about the waiver and did not give permission to counsel to waive motions.

5. On July 28, 2022, Mr. Khalaf filed a letter (dated June 30, 2022 (Doc. 55)) with the Court asserting his innocence.

6. After some continuances, Mr. Khalaf's private counsel filed a motion to withdraw from the case (Doc. 66) asserting that Mr. Khalaf discharged him.

7. The Court held a hearing on the motion where Mr. Khalaf asserted he wanted counsel to go to trial. (*See* Exhibit A, Transcript of October 13, 2022 Hearing at p. 3, ll. 23-25 ("The first time I knew there was something called a speedy trial was in June, from like my inmate's friends there. **That's why I asked for a speedy trial** because I kept losing…"). And that he directed counsel not to accept any offers. *Id.* at p. 4-5, ll. 22-25, ll. ("So at that time I send the letter. And last week I get, like, a visit from Mr. Lozano to Marion County when he gave me another, like, offer. **I said I told you I'm not accepting any offers** because, I mean, I lost everything and I never been in any trouble. Even like I spend, like, almost nine months now."). Mr. Khalaf again asserted he wanted a trial. Id. at p.5, ll. 13-18 ("So regarding your -- I mean, your question, Your Honor, I don't -- like, I went all over the place, but I don't know at this point -- **I want to get to the trial**, like, to get this solved as soon as possible. If Mr. Lozano, he thinks he can solve this like as soon as possible, I would agree.") (**emphasis added**).

8. The focus of the hearing from the Court's perspective was on whether Mr. Khalaf wanted to terminate private counsel or wanted to proceed with him. To that point, Mr. Khalaf

agreed to keep private counsel because he did not want to delay matters, but he expressed no willingness to plead or take any offers.

9. Thereafter, the Court held a *Frye* hearing on October 26, 2022. There it was communicated that Mr. Khalaf had rejected the Government's then-latest offer. (*See* Exhibit B, Transcript of October 26, 2022 Hearing at p. 7-8.).

10. Also at the hearing, Mr. Khalaf's private counsel mentioned he was not an immigration attorney and Mr. Khalaf should consult one, but his research found "that neither the felony certainly nor a misdemeanor to the charges as presently charged would be a crime of moral turpitude that would result in his deportation…" *Id*. at p. 10, ll. 22-25.

11. On December 1, 2022, the parties came before the Court for a change of plea hearing pursuant to a written plea agreement. Counsel for Mr. Khalaf announced that Mr. Khalaf was prepared to enter a plea of guilty to a superseding misdemeanor offense of blackmail in exchange for the Government dropping the felony offense of cyberstalking and the Government's agreement to Mr. Khalaf's post-conviction/ presentence release. The Court questioned Mr. Khalaf under oath if that was what he wanted to do and he replied that it was. (Exhibit C, Transcript of December 1, 2022 Hearing at p. 2-3.). Thereafter the Court asked Mr. Khalaf if he understood what he was doing, whether he understood the English language, whether he had discussed the plea agreement with his counsel, and several other questions to satisfy the Court that Mr. Khalaf understood exactly what he was doing. One such example is the following passage:

> THE COURT: All right. And tell me what it is that you want to do with your case in court today. What do you want to do?

THE DEFENDANT: I want to change my plea to guilty according to this

agreement.

(Ex. C, Transcript of December 1, 2022 Hearing at p. 6, ll. 11-15.). Thereafter the Court asked Mr. Khalaf did he understand he was giving up his right to a trial and Mr. Khalaf responded that he did so understand. Ultimately, the Court accepted the change of plea and set a date for sentencing.

12. On December 5, 2022, Mr. Khalaf filed a *pro se* motion to withdraw the guilty plea. (Doc. 86). In it he asserted that he did not even know he had a court date before the change of plea hearing. He also stated he thought the point of the hearing was to get released not to end the case. He stated the need to fight the charges were greater than ever because people were threatening his family after hearing accounts to Mr. Khalaf's conduct in the media. This supplemental motion follows.

## Relevant Legal Standards

Under Fed. R. Crim. P. 11(d)(2)(B), a defendant may withdraw his guilty plea before the imposition of sentence if he "can show a fair and just reason for requesting the withdrawal." The burden is on the Defendant to demonstrate such a reason. *United States v. Norvell*, 729 F.3d 788 (8th Cir. 2013). The standard governing withdrawals under Rule 11(d)(2)(B) is liberal, although it does not establish an "automatic right to withdraw a plea." *United States v. Ramirez-Hernandez*, 449 F.3d 824, 826 (8th Cir. 2006). Upon finding a fair and just reason, courts must then consider "whether the defendant asserts his innocence of the charge, the length of time between the guilty plea and the motion to withdraw it, and whether the government will be prejudiced if the court grants the motion." *United States v. Nichols*, 986 F.2d 1199, 1201 (8th Cir. 1993).

Argument

Mr. Khalaf wishes to withdraw his guilty plea because of the reasons identified in his *pro se* motion. However, he has since identified other fair and just reasons to withdraw his guilty plea. Simply put, his previous counsel rendered him ineffective assistance of counsel that he relied upon in deciding to change his plea.

I. Private Counsel Was Not Competent To Provide Mr. Khalaf With An Understanding Of The Effect Of Pleading Guilty On His Immigration Status.

At the *Frye* hearing, his counsel admitted he was not "an immigration attorney" which should be understood to mean he was not an expert in immigration matters. He stated that he advised Mr. Khalaf to consult an immigration attorney. He nevertheless then proceeded to offer his opinion on Mr. Khalaf's immigration status. He stated pursuant to his research "neither the felony certainly nor a misdemeanor to the charges as presently charged would be a crime of moral turpitude that would result in his deportation…" Defense Counsel's remarks that his research revealed a blackmailing conviction would not "certainly" compel deportation injected a false sense of security to a client desperate to resume the education that drew him to this country. This was not an adequate statement of the law.

Mr. Khalaf's statements at the *Frye* hearing made clear that his ability to remain in this country and pursue the educational goals that brought him here played the central goal to his disposition of the charges he faced. (Ex. B, *Frye* Tr. 8.). Plainly, Mr. Khalaf's case is one where "'[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence.'" *Padilla v. Kentucky*, 559 U.S. 356, 368 (2010), quoting *INS v. St. Cyr*, 533 U.S., 289, 322 (2001) (quoting 3 Criminal Defense Techniques §§ 60A.01, 60A.02[2] (1999)). "[A]s a matter of federal law, deportation is an integral part—indeed,

sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id*. at 364.

The Sixth Amendment right to effective assistance of counsel extends to accurate advice concerning the immigration consequences and risks of deportation in such cases, even though deportation is not generally deemed a criminal penalty. *Id*. at 365-66. The Supreme Court has held that when the immigration law "is not succinct and straightforward [as to the immigration consequences], a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369. "But when the deportation consequence is truly clear . . . , the duty to give correct advice is equally clear." *Id.*

Cyberstalking under 18 U.S.C. §2261A(2)(B) could very well be judged a felony crime of moral turpitude, and thus deportable, as an immigration judge found in one pertinent case that an immigrant who was convicted of cyberstalking under a categorically similar Illinois statute had indeed committed a crime of moral turpitude and was both inadmissible and removeable under immigration law. *See Zlatan v. Holder*, 390 F. App'x 569, 571 (7th Cir. 2010). Also, as to misdemeanor blackmail, blackmail has been determined to be a crime of moral turpitude. *See e.g.*, 23 A.L.R. Fed. 480 (collecting cases). Convictions for crimes involving moral turpitude subject the offender to deportation if they are punishable by up to one year in prison, 8 U.S.C. § 1227(a)(2)(A). The amended charge of misdemeanor blackmail carries this penalty range, 18 U.S.C. so long as it is punishable by a one year term of prison. Thus, an alien who is convicted of a crime of moral turpitude, albeit a misdemeanor, can still be deported under 8 U.S.C. § 1227(a)(2)(A).

Moreover, the offense conduct defined by the blackmail statute may easily satisfy the definition of moral turpitude recognized by the Eighth Circuit in the immigration context. In the absence of a statutory definition of the term, the Eighth Circuit has looked to the definition of the term by the Bureau of Immigration Affairs ("BIA"):

> Moral turpitude refers generally to conduct which is inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general. Moral turpitude has been defined as an act which is per se morally reprehensible and intrinsically wrong or malum in se, so it is the nature of the act itself and not the statutory prohibition of it which renders a crime one of moral turpitude

*Ortiz v. Barr*, 962 F.3d 1045, 1048 (8th Cir. 2020). The nature of the crime of blackmail clearly requires conduct contrary to the accepted rules of morality and duties in one's conduct with others and society in general, particularly in relation to crimes. *Id*.

"It is quintessentially the duty of counsel to provide [one's]client with available advice about an issue like deportation," and the failure to do so clearly establishes conduct falling outside the wide range of reasonable professional conduct under the circumstances. *Padillah*, 559 U.S. at 371.

Mr. Khalaf's previous attorney's admission he lacked expertise in immigration law counseled against holding out the enticing lure that the misdemeanor plea bargain he had secured would not clearly render him deportable. Under Padilla, if the immigration consequences are truly unclear, non-immigration counsel should not go further than to advise that the conviction "may carry a risk of adverse immigration consequences." 559 U.S. at 369. Mr. Khalaf's counsel noted his lack of immigration expertise, yet downplayed the risk of adverse consequences by offering his own confusing observation that his independent research showed that downplayed the risk by adding his own legal conclusion "from discussions and my own research .. that

neither the felony certainly nor a misdemeanor to the charges as presently charged" would do so. (Ex. B, *Frye* Tr. 8.). Counsel did not identify with whom he discussed the question nor disavow that such other persons had immigration expertise.

Counsel's imprecise observations provided a strong albeit unreasonable lure that Mr. Khalaf relied on to proceed with the plea agreement his attorney had put together. Counsel could not reasonably expect his incarcerated client to scrap together funds to consult a separate attorney after spending thousands of dollars to hire him.

Mr. Khalaf's previous counsel noting that he was not competent to speak to the effect of a conviction on Mr. Khalaf's immigration status and then offering his opinion anyway that the offense Mr. Khalaf was to plead was not a crime of moral turpitude was per se ineffective. This misunderstanding of the law was critical to Mr. Khalaf's understanding of the consequences of pleading guilty. "[I]neffective assistance of counsel during the plea process "can serve as the requisite 'fair and just reason' for withdrawal [but] only if [defendant] demonstrates both that his attorney's performance was deficient and that he was prejudiced by it." *United States v. Trevino*, 829 F.3d 668, 673 (8th Cir. 2016). Mr. Khalaf's core desire to remain in this Country to pursue the education that brought him here in the first place easily establishes a reasonable probability that he would not have pled guilty but for his previous counsel's statements belittling the risk of deportation posed by a guilty plea to the amended misdemeanor charge of blackmailing.

Counsel's ineffective assistance constitutes just cause to withdraw his plea of guilty. The record further supports granting his motion in light of the fact he made this request within five days of entering his plea of guilty and the lack of any prejudice to the government's ability to present its case.

II. Private Counsel Apparently Did Not Request And Did Not Review Any Forensic Evidence In This Matter And Thus Could Not Be Deemed To Have Given Mr. Khalaf Competent Advice As To The Strength Of The Government's Case.

In March of 2002, the Government shared certain pieces of discovery (screen shots of messages, reports of investigation, etc.) with the defense and asserted there would be more evidence to come, specifically "forensics". *See* Exhibit D. In April 2022, the undersigned moved to withdraw as private counsel entered in the case. In May 2022, the undersigned sent correspondence to private counsel accompanying Mr. Khalaf's file and informing him that the Government had yet to share the forensic evidence. Exhibit E. Mr. Khalaf asserts that no forensic evidence was ever shared with him and on information and belief, his private counsel never requested it.

The duty to investigate derives from an attorney's basic function, which is "to make the adversarial testing process work in the particular case." *Strickland v. Washington*, 466 U.S. 668, 690 (1984); *Walls v. Bowersox*, 151 F.3d 827, 833 (8th Cir. 1998). "Because that testing process generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies, . . . counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quotation omitted). An attorney who has not reviewed investigated the evidence in the government's possession to establish its existence can only prepare any defense in the course of the trial where counsel first sees it. Missouri rule of professional conduct 4-1.1 instructs that "a lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." *Cf Rompilla v. Beard*, 545 U.S. 374, 386 (2005) (Without making reasonable efforts to review file disclosed night before, defense counsel could have had no hope of knowing whether the prosecution was

quoting selectively, or whether there were circumstances extenuating the behavior described by the victim. ").

The forensic evidence is what would be used to prove Mr. Khalaf's computer or phone were the sources of the messages that constitute the threats and/or extortion requests that are the crux of the case. Mr. Khalaf cannot be understood to have entered into a plea knowingly without being able to know whether the Government actually had the evidence to prove its case in court. The Sixth Amendment right to trial does not depend on one's ability to prove innocence and prejudice is measured by whether a reasonable probability exists that but for counsel's omission a reasonable likelihood exists that the accused would not have pled guilty. *See Hill v. Lockh*art, 474 U.S. 52, 59 (1984). Counsel's apparent failure to investigate any of the forensic evidence on which the government's case at trial would heavily depend influenced Mr. Khalaf's surrender of the right to trial he sought to vindicate his future and education in this country. It bolsters the just cause to grant his motion to withdraw his guilty plea.

WHEREFORE, the Defendant respectfully moves the Court to grant his request to withdraw his plea of guilty for the foregoing just reasons and to continue the sentencing date to accommodate full briefing on this issue.

Dated: April 17, 2023

Respectfully submitted,

/s/Mohammed G. Ahmed
MOHAMMED G. AHMED
Assistant Federal Public Defender
Bar No. 6285612 IL
1010 Market Street, Suite 200
St. Louis, Missouri 63101
Telephone: (314) 241-1255
Fax: (314) 421-3177
E-mail: Mohammed_Ahmed@fd.org
ATTORNEY FOR DEFENDANT

CERTIFICATE OF SERVICE

      I hereby certify that on April 17, 2023, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon Ms. Colleen C. Lang, Assistant United States Attorney.

                                          /s/ Mohammed G. Ahmed
                                          MOHAMMED G. AHMED
                                          Assistant Federal Public Defender