# Exhibit A

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,    )
                             )
    Plaintiff,                )
                             )
    v.                       ) No. 4:22-CR-00062-HEA
                             )
                             )
HUSSEIN KADHIM ABOOD         )
KHALAF,                      )
                             )
    Defendant.               )

MOTION HEARING

BEFORE THE HONORABLE HENRY E. AUTREY
UNITED STATES DISTRICT JUDGE

OCTOBER 13, 2022

APPEARANCES:

For Plaintiff:      Colleen C. Lang, Esq.
                    Matthew Drake, Esq.
                    OFFICE OF THE U.S. ATTORNEY
                    111 South 10th Street, 20th Floor
                    St. Louis, MO 63102

For Defendant:      Charles C. Lozano, Esq.
                    ATTORNEY AT LAW
                    2032 Hanley Road, Suite 232
                    O'Fallon, MO 63368

Reported By:        REAGAN A. FIORINO, RMR, CRR, CSR, CCR
                    Official Court Reporter
                    United States District Court
                    111 South 10th Street
                    St. Louis, MO 63102 | (314)244-7989

PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
PRODUCED BY COURT REPORTER COMPUTER-AIDED TRANSCRIPTION

1                       OCTOBER 13, 2022

2         (The proceedings commenced at 11:18 a.m.)

3         (The following proceedings were held in open court

4 with the defendant present:)

5         **THE COURT:** This is the matter of United States of

6 America v. Hussein Kadhim Abood Khalaf,

7 Cause No. 4:22-CR-62-HEA.

8         The matter is before the Court for purposes of

9 proceeding on defense counsel's motion to withdraw as well as

10 Defendant's letter in relation to same, I believe, wishing to

11 have counsel removed from the case.

12         Defendant is present in open court, Mr. Lozano is

13 present, and the United States is present through Mr. Drake.

14         **MR. DRAKE:** Yes, Your Honor. And Ms. Lang.

15         **THE COURT:** All right. Are we ready to proceed?

16 And should I have Mr. Drake --

17         **MR. LOZANO:** No, I'm fine with him being in here,

18 Your Honor.

19         **THE COURT:** Good.

20         **MR. LOZANO:** Your Honor, under Missouri rules of

21 professional conduct, I'm required to tender my withdrawal.

22 If we were to proceed, I am prepared and willing to continue

23 on as attorney; however, I do need to put it in front of the

24 Court. Last week, Mr. Khalaf had written a letter to the

25 Court making certain allegations. I went to see him. He

1  confirmed that he did not want me to be his attorney. So I
2  offer that as a requirement.
3      On the other hand, it is set for trial at the end of
4  the month. And my concern is for this case being -- aging as
5  well as him continuing to be in detention without a
6  resolution. So I am prepared to continue on with the case. I
7  believe I can fairly represent him, in spite of the
8  falling-out that we have had. But if you believe and
9  Mr. Khalaf desires another attorney, then I am certainly
10 willing to withdraw.
11     **THE COURT:** Mr. Khalaf, did you hear everything that
12 Mr. Lozano just said?
13     **THE DEFENDANT:** Yes.
14     **THE COURT:** Are you in agreement with everything he
15 said? Do you want to have him removed as your attorney?
16     **THE DEFENDANT:** Your Honor, so I start -- so I am
17 not, like, familiar with the laws here in the U.S. I'm
18 international student here. There's no excuse, but it's just
19 when I appointed Mr. Lozano back in April, like 2022, instead
20 of my public defender, I just ask for better representation.
21 And like sometimes -- sometimes when probably, like, he visits
22 me, like, a couple times in June and July.
23     The first time I knew there was something called a
24 speedy trial was in June, from like my inmate's friends there.
25 That's why I asked for a speedy trial because I kept losing --

1  I am a Ph.D. student at Saint Louis University.  They expelled
2  me without a hearing.  So when I called the university, they
3  said we sent you e-mails and you did not attend the hearing.
4  I was like I'm in jail since January 24th.
5      So after that call I had a visit -- I understood
6  that he was talking probably about dismissing the case.
7  That's what was my understanding.  Like, when -- when he comes
8  and he asks me to sign the waiver for the speedy trial was in
9  August.  So I signed.  And then after that, I know that we
10 have a contract that I have to pay the rest of the money, but
11 after that I was expecting a visit from Mr. Lozano the next
12 week which he told me and I did not get it.
13     **THE COURT:**  Uh-huh.
14     **THE DEFENDANT:**  At that time, they cut my phone from
15 Marion County because, like, I visited my family on the kiosk
16 and they said that's illegal.  This is the only way -- they
17 are overseas.  So I had no way to contact him for that month,
18 from August to September.  When my phone come back, I asked my
19 friend and he said he called Mr. Lozano and Mr. Lozano said
20 I'm not coming until, like, he get paid the 5,000.
21     **THE COURT:**  Okay.
22     **THE DEFENDANT:**  So at that time I send the letter.
23 And last week I get, like, a visit from Mr. Lozano to Marion
24 County when he gave me another, like, offer.  I said I told
25 you I'm not accepting any offers because, I mean, I lost

1 everything and I never been in any trouble.  Even like I
2 spend, like, almost nine months now.
3      So at the end of my visit, I went back -- I wanted
4 to go back to my pod and honestly there was disappointing when
5 he said, "fuck you and enjoy staying in the prison."
6      I asked my friend to call the office.  And I think
7 he called on October 7th.  That was the last visit.  And he --
8 they said that was not ethical, but I have to send a letter
9 myself to inform that, which I sent.  But, I mean, I guess the
10 mail would take time because they don't take it on the
11 weekends.
12      **THE COURT:**  Uh-huh.
13      **THE DEFENDANT:**  So regarding your -- I mean, your
14 question, Your Honor, I don't -- like, I went all over the
15 place, but I don't know at this point -- I want to get to the
16 trial, like, to get this solved as soon as possible.  If
17 Mr. Lozano, he thinks he can solve this like as soon as
18 possible, I would agree.  Other than that, I go with the
19 public defender, I don't know how long that is going to take.
20 Probably three or four months.  And I am already here, like,
21 for nine months.
22      **THE COURT:**  Uh-huh.
23      **THE DEFENDANT:**  I am not 100 percent sure.  I mean,
24 if him staying will help to solve the case, I would agree to
25 that.  But if not, I mean, I want -- I want better

1 representation for myself also.  Yeah.

2 **THE COURT:**  Well, so you are not satisfied with the

3 representation that you received from Mr. Lozano, but you are

4 not sure you want to have him removed from your case at this

5 point today because you are concerned about how long the case

6 has been going on in relation to how long you have been locked

7 up; right?

8 **THE DEFENDANT:**  Yes.

9 **THE COURT:**  Is that a fair statement of what you are

10 thinking and feeling?

11 **THE DEFENDANT:**  Yes.  Because last time I've been to

12 court was February.  And then I've been denied bond since -- I

13 mean, every single time because they say I'm a flight risk.

14 Which probably -- I mean, they have my passport.  They have

15 everything.

16 **THE COURT:**  Well, let me ask you this.  Up until the

17 time of the last visit with Mr. Lozano, do you think that you

18 two are getting along okay?

19 **THE DEFENDANT:**  I mean, I had a very good visit in

20 July, which he explained very -- I mean, he explained that we

21 are going with the speedy trial because I lost -- I was

22 expelled from school in May.  And I know in June -- so I was

23 like I don't have any other reason to delay because I lost

24 almost everything.  My main reason to come to the United

25 States is to study.  And I lost it.  I mean . . .

1 So in July, it was a very good visit. In August,
2 we -- I mean, he told me that I need to waive the speedy trial
3 because it's better for the case and probably is going to be
4 dismissed.
5 **THE COURT:** Anything else you had to add,
6 Mr. Lozano?
7 **MR. LOZANO:** Well, Your Honor, like I said earlier,
8 I certainly can continue on. Other than this one moment that
9 we had together on Friday, I communicated with him regularly.
10 It is difficult with him being in Marion County. They don't
11 accept inbound calls. I'm an hour and a half away. That's a
12 six-hour day for me to go see him. I have seen him a dozen
13 times since March.
14 So the level of communication has been there, from
15 an attorney standpoint. I understand his frustration with not
16 knowing the system, though. And so I can honestly tell the
17 Court that I would, if continued on, would certainly continue
18 to represent him to the best of my abilities. I know the
19 case. But I don't want him to be uncomfortable. The point
20 that he and I had words was at the end after he had already
21 discharged me.
22 You know, if he can look past that, then I can
23 certainly continue on. But I don't want him to be
24 uncomfortable.
25 **THE COURT:** Mr. Khalaf, what do you want to do?

|    |                                                                              |
|----|------------------------------------------------------------------------------|
| 1  | **THE DEFENDANT:**  Yeah --                                                  |
| 2  | **THE COURT:**  Do you want to keep him or do you want                       |
| 3  | to get a new lawyer?  That's the bottom line.                                |
| 4  | **THE DEFENDANT:**  Because I want -- I want probably to                     |
| 5  | solve this as soon as possible.  I'm just tired.  Like, to get               |
| 6  | deported or something, because I never contacted my family in                |
| 7  | nine months.  And so probably I would just keep him.                         |
| 8  | **THE COURT:**  Are you sure?                                                |
| 9  | **THE DEFENDANT:**  Yes.                                                     |
| 10 | **THE COURT:**  Okay.  That being said, this matter will                     |
| 11 | remain on the docket for October 31.  Is that when it is set,                |
| 12 | I think?  And Mr. Lozano will remain as counsel for the                      |
| 13 | defendant and his representation of same.  In light of                       |
| 14 | Mr. Khalaf's statements here in court, and the Court's                       |
| 15 | observation of Mr. Khalaf during these discussions, the Court                |
| 16 | concludes that he is sincere in his desire to retain                         |
| 17 | Mr. Lozano and is sincere in having someone who is entirely                  |
| 18 | familiar with the case and would aid in the expeditious                      |
| 19 | resolution of the issues.                                                    |
| 20 | That being said, the motion to withdraw by                                   |
| 21 | Mr. Lozano is overruled under the circumstances, as is                       |
| 22 | Defendant's *pro se* motion, as the Court interprets the                     |
| 23 | defendant's letter, to recuse Mr. Lozano is overruled.                       |
| 24 | That will conclude this proceeding and we will see                           |
| 25 | you all on October 31st.                                                     |

```
 1              Yes, sir.
 2              THE DEFENDANT:  Am I allowed to say something?
 3              THE COURT:  Yes.
 4              THE DEFENDANT:  Your Honor, I have been asking to
 5     see the doctor since February.  And every time, like, the
 6     nurse just says our resources are limited.  I mean, I have
 7     heart issues.  I've been asking every -- I mean, at the end, I
 8     stopped giving, like, sick call.
 9              THE COURT:  Are you taking any medications?
10              THE DEFENDANT:  No.  Because last time they gave me
11     medication and I did not feel, like, comfortable.  I felt,
12     like, dizzy, almost fainted, so . . .
13              THE COURT:  Were you taking any types of medications
14     for that condition before you were --
15              THE DEFENDANT:  No, I was just seeing some doctors.
16              THE COURT:  All right.  But you weren't --
17              THE DEFENDANT:  No, I was not on any medication.
18              THE COURT:  But you are being monitored by your
19     doctor?
20              THE DEFENDANT:  Yes.  And I'm not picky about the
21     food, but I'm Muslim.  That's my religion.  There they have
22     kosher which is like for Jews and they have normal -- they
23     don't have any food for Muslims.  I understand probably this
24     is how it goes, like, in some jails, but I've been also like
25     asking, like, if they can -- I mean, if they can provide,
```

1  like, some food that I feel comfortable eating.  That would be
2  good because, like, I mean I have been eating just to survive
3  for the last few months.
4      **THE COURT:**  Things you would feel comfortable eating
5  but not necessarily halal.
6      **THE DEFENDANT:**  Yes.  I mean, I explained to them, I
7  said with Mr. Kevin Coates, like, the administrator of the
8  jail, I explained what halal is.  I told him he can Google it,
9  he can just look for it more, if they are not familiar with
10  Muslim food.  But they said they have a contract and they
11  cannot, like, change it for, like, one person.
12      So I asked, like, probably if they can move me to
13  another jail where they serve halal food.  Those are, like,
14  the concerns that I wanted to address.
15      **THE COURT:**  Okay.
16      **THE DEFENDANT:**  But the doctor, I would really
17  appreciate if -- because I have this pain.  It's been going on
18  for a few months.
19      **THE COURT:**  All right.
20      Can you guys talk with -- what is her name?
21      **THE U.S. MARSHAL:**  Anne?
22      **THE COURT:**  Yes.  About checking in with Marion
23  County about the medical stuff and also the food stuff and
24  alternatively -- and I don't know.  I mean, I know we have a
25  lot of facilities that we have contracts with just because of

```
 1  the nature of things.
 2          And, you know, Mr. Khalaf, I don't know if there's
 3  any place that the marshals contract with that actually has a
 4  provision for halal.
 5          But if you guys could check that with Anne, too, we
 6  will look into that and see how it develops.  And maybe she
 7  could maybe put a little something in the ear of the jailer
 8  there about his diet.
 9          Okay.  We will see what happens.
10          **MR. LOZANO:**  Your Honor, I will add that I had filed
11  a request with the U.S. Marshal's Office, per their request, a
12  form, alerting them to his medical concerns.  So it has been
13  lodged with them prior.
14          **THE COURT:**  Right.  Right.
15          **MR. LOZANO:**  Okay.
16          **THE COURT:**  And I think the issue here is Marion
17  County more so than the marshal service.
18          And they are correct.  They do have a contract with
19  the marshal service.  That's a big deal for me.  I don't know
20  if it's a big deal for them.  Not the marshal service, for
21  Marion County.  I know it's a big deal for the marshal service
22  because they pay these jails a lot of money to do and maintain
23  prisoners for them.
24          So, anyway, we will see what happens.  Okay?
25          **MR. LOZANO:**  I appreciate it.
```

**THE COURT:** Thank you, Mr. Lozano.

**MR. LOZANO:** Thank you.

**MR. DRAKE:** Thank you, Judge.

**THE COURT:** We will be in recess.

(The proceedings concluded at 11:34 a.m.)

CERTIFICATE

I, Reagan A. Fiorino, Registered Merit Reporter and Certified Realtime Reporter, hereby certify that I am a duly appointed Official Court Reporter of the United States District Court for the Eastern District of Missouri.

I further certify that the foregoing is a true and accurate transcript of the proceedings held in the above-entitled case and that said transcript is a true and correct transcription of my stenographic notes.

I further certify that this transcript contains pages 1 through 12 inclusive and was delivered electronically and that this reporter takes no responsibility for missing or damaged pages of this transcript when same transcript is copied by any party other than this reporter.

Dated at St. Louis, Missouri, this 18th day of January, 2023.

*/s/ Reagan A. Fiorino*
Reagan A. Fiorino, RDR, CRR, CRC, CCR
Official Court Reporter